OPINION
{¶ 1} Plaintiffs-appellants Shirley Smith, and Richard and Margaret Cronin appeal the June 4, 2002 Judgment Entry of the Stark County Court of Common Pleas, Probate Division, which granted summary judgment in favor defendants-appellees Alta Jarvis, Administratrix of the Estate of Phillip A. Mattern, deceased, and Kathleen Machesney, Scott Mattern, Timothy R. and Karen Hayes, Stanley Mattern, and Gary Zeigler, the Stark County Treasurer.
 STATEMENT OF THE CASE AND FACTS {¶ 2} On May 11, 1998, Phillip Mattern, purchased a home and lot at 707 10th Street, Canton, Ohio, with funds loaned to him by appellants. Mr. Mattern and appellants entered into a promissory note in the principal sum of $30,000 plus interest at the rate at 21% per annum from and after maturity date. Appellants held the first mortgage on the subject property. At the time of his loan, Phillip was largely dependent upon his grandmother, appellee, Alta Jarvis, for financial support. The purpose of the loan was to provide Phillip with funds he could not otherwise obtain through conventional means of financing from which he could make improvements to the property and subsequently sell the property for a profit.
 {¶ 3} In addition to the note and mortgage, appellants and Mr. Mattern executed an Assignment of Leases, Rents, and Profits as a source of revenue for the note and mortgage. The documents were recorded on May 11, 1998, in Stark County.
 {¶ 4} Shortly thereafter, the City of Canton Department of Health inspected the residence and cited Mr. Mattern with several violations. The list of repairs needed to be made to bring the house into compliance with the code was extensive. One estimate of the cost of necessary repairs was approximately $14,000.
 {¶ 5} On August 27, 1999, Mr. Mattern took his own life. At the time, he had not made a single payment on the promissory note and had done little, if anything, to fix the property. Because the decedent's mother lived in Colorado, Ms. Jarvis agreed to act as the administratrix and hired Attorney Joseph Scott.
 {¶ 6} Before his death, the decedent was in the process of retaining refinancing on the property through Crystal Mortgaging. Further, the decedent had listed the property for sale with John Budnie, Jr.
 {¶ 7} At the time of his death, the decedent had no money. He owned a Chrysler which was later sold by the estate for $1,000. A personal injury claim settled soon after his death, provided the estate with $2,978. Thus, the estate contained total assets of $3,978. After the funeral expenses, and allowances for administrative costs and minimal fiduciary fees, the estate had no money to maintain or repair the property.
 {¶ 8} In light of the debt owed to appellants, Attorney Scott proposed to appellants' attorney, John Ergazos, the estate compromise the debt by a transfer of the deed to the property in lieu of foreclosure. Attorney Scott explained the estate would not have other assets from which appellants could collect. This proposal was made before the application to administer the estate was filed with the Probate Court.
 {¶ 9} Attorney Scott, via an affidavit, testified he believed appellants would accept a deed in lieu of foreclosure. Accordingly, on January 21, 2000, Attorney Scott filed an application to compromise the debt. In reaction to Attorney Scott's tender of the deed, Attorney Ergazos made an inquiry to Timothy and Karen Hayes who held a second mortgage on the property. Mr. Mrs. Hayes decided they were unwilling to release their mortgage. Appellants decided they were unwilling to accept the deed in lieu of foreclosure with the Hayes' encumbrance. On January 21, 2000, appellants rejected the tender of the deed.
 {¶ 10} Attorney Scott again told Attorney Ergazos there would be insufficient assets in the estate to satisfy any deficiency judgment after foreclosure. Nonetheless, appellants chose to file a complaint for foreclosure on February 23, 2000. On June 16, 2000, the trial court entered a decree of foreclosure. The first order of sale under the foreclosure was dated September 7, 2000. This sale, and two other orders of sale, were each unsuccessful.
 {¶ 11} During this process, the property continued to deteriorate. Appellants knew the estate did not have funds to repair the property and Ms. Jarvis was not providing her own funds to do so.
 {¶ 12} On July 14, 2000, one month after appellants obtained the foreclosure, the City of Canton sent Attorney Ergazos a notice identifying code violations and advising him the house would be demolished if repairs were not made. Attorney Ergazos requested an extension based upon the appellants' intentions of purchasing the property at the first sheriff's sale then making repairs to avoid the demolition. However, appellants never purchased the property at the sheriff's sale and the demolition order was issued by the Board of Building Appeals.
 {¶ 13} Appellants then filed a complaint and obtained an injunction to suspend the demolition. That injunction was rescinded by the trial court because appellants failed to make the necessary repairs. Thereafter, on July 19, 2001, appellants voluntarily dismissed the foreclosure case because the building had been demolished by the city on June 25, 2001. Due to the liens against the property, including the second mortgage, and the tax liens and demolition cost liens, the vacant lot was now a liability to the estate.
 {¶ 14} On July 26, 2001, the Probate Court filed its Judgment Entry approving the application to compromise the debt, but the tender deed was not accepted by appellants and the debt was never compromised. Six months later, appellants filed the instant action in the Probate Court, seeking a declaratory judgment on an alleged breach of fiduciary duties by Alta Jarvis, and seeking judgment on their claim to recover on the fiduciary bond issued by CNA Surety in the sum of $40,000 plus court costs. The parties filed stipulations on April 29, 2002. On the same day, appellees filed a motion for summary judgment as to all claims asserted by appellants. The trial court conducted a hearing on appellees' motion for summary judgment on June 4, 2002. In a judgment entry filed the same day, the trial court granted appellees' motion for summary judgment disposing of all of appellants' claims.
 {¶ 15} It is from this judgment entry appellants prosecutes this appeal, assigning the following errors for our review:
 {¶ 16} "I. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS-APPELLEES WHEN THERE EXIST GENUINE ISSUES OF MATERIAL FACT RELATIVE TO ALTA JARVIS' FULFILLMENT OF HER FIDUCIARY DUTIES IN HER HANDLING OF THE 10TH STREET PROPERTY."
 {¶ 17} "II. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AS A MATTER OF LAW IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANTS-APPELLEES ON PLAINTIFFS'-APPELLANTS' CLAIM ON THE FIDUCIARY BOND WHEN GENUINE ISSUES OF MATERIAL FACT EXIST RELATIVE TO ALTA JARVIS' FULFILLMENT OF HER FIDUCIARY DUTIES IN THE HANDLING OF THE 10TH STREET PROPERTY AND DAMAGES SUFFERED BY PLAINTIFF-APPELLANTS.
 {¶ 18} "III. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AS A MATTER OF LAW IN FINDING THAT RELIANCE ON ADVICE OF COUNSEL IS A LEGAL DEFENSE TO PLAINTIFFS'-APPELLANTS' CLAIMS.
 {¶ 19} "IV. THE TRIAL COURT COMMITTED REVERSIBLE ERROR AS A MATTER OF LAW IN FINDING THAT THE DOCTRINE OF LIS PENDENS IS APPLICABLE."
 I, II, III, IV {¶ 20} Because appellants' assignments of errors are interrelated, we address them together. In appellants' first assignment of error, they maintain the trial court erred in granting summary judgment because a genuine issue of material fact existed as to whether Ms. Jarvis fulfilled her fiduciary duties in handling the property. In their second assignment of error, appellants claim the trial court erred in granting summary judgment on appellants' claim for the fiduciary bond as genuine issues of material fact exist relative to Ms. Jarvis' handling of the property. In their third assignment of error, appellants contend the trial court erred in finding Ms. Jarvis' reliance on the advise of counsel was a legal defense to appellants' claims. Finally, in appellants' fourth assignment of error, appellants contend the trial court erred in finding the doctrine of lis pendens was applicable to the instant matter. We disagree with each of appellants' contentions.
 {¶ 21} Executors and administrators of an estate are fiduciaries. R.C. 2109.01. While a determination of a breach of fiduciary duty depends largely upon circumstances in each case, waste or diminution of the estate, or negligence causing loss to the estate, can result in a finding of a breach of fiduciary duty. Therefore an administratrix may have a duty to sell real property of the estate if it appears other assets of the estate will not be sufficient to pay outstanding debt. Stout v.Stout (1910), 82 Ohio St. 358, 363. Further, a party in possession of collateral has a duty to preserve it on behalf of secured creditors. SeeBuckeye Fed. Sav. Loan Assoc. v. Guirlinger (1991),62 Ohio St.3d 312, 316.
 {¶ 22} Appellants argue Jarvis had a duty to sell and liquidate the real estate in order to satisfy their debt. Appellants further argue because Jarvis made no effort to list the property with a real estate agent, broker, or auctioneer, she failed in her responsibility to attempt to satisfy the debt. At the very least, appellants maintain this presents a genuine issue of material fact which precludes summary judgment. We disagree.
 {¶ 23} As stated in the above, Jarvis promptly sold the few assets in the decedent's estate. These assets paid only for administrative costs, fiduciary fees and the cost of the burial. Because there were no funds to pay the debt to appellants or to pay for repairs to the property, Jarvis immediately tendered the deed to appellants in lieu of their threat of foreclosure.
 {¶ 24} By affidavit, appellants' attorney stated he discussed the possibility of accepting the deed in lieu of foreclosure. Appellees' attorney, also by affidavit, testified he understood Attorney Ergazos had agreed to accept the deed in lieu of foreclosure. For that reason, Attorney Scott applied to the Probate Court, for authority to compromise the estate by granting them a deed in lieu of foreclosure.
 {¶ 25} Appellants' attorney then sought out the Hayes in an attempt release their second lien. Only after the Hayes' refused to release their mortgage, did Attorney Ergazos reject the tender of the deed. Therefore, from a time before the estate was opened until after the date upon which Attorney Scott filed the application to compromise debt, Jarvis, at the very least, knew the primary lien holder was considering the offer to accept the deed in lieu of foreclosure. Therefore, we agree with appellees, Jarvis had no duty to initiate an action for the sale of the property during this period of time. We find Jarvis was justified in awaiting a response to her tender of the deed to appellants.
 {¶ 26} Further, less than one month after rejecting the tender of the deed, appellants' filed a complaint and foreclosure. Once the foreclosure was initiated, Jarvis was again under no obligation to sell the property. Pursuant to the doctrine of lis pendens, a third person is deemed to have notice of a pending action involving an interest in real estate and cannot acquire an interest in real estate against the litigants title. R.C. 2703.26. We agree with appellees the doctrine of lis pendens would have frustrated any attempted sale of the property once the foreclosure action had been instituted.
 {¶ 27} The foreclosure action and appellants' attempts to sell the property at a sheriff's sale continued for seventeen months. During that time, Jarvis was under no obligation to sell the property because she could not have conveyed clear title. Appellants concede this fact in their brief to this Court. Even if Jarvis could have found a real estate broker willing to list the property, she could not have entered into a sales contract in which she promised to convey clear title. Accordingly, until appellants finally dismissed their foreclosure action, Jarvis could not have reasonably attempted to sell the property.
 {¶ 28} By the time the foreclosure action was dismissed, the house had been demolished. The liens, other than appellants' first mortgage, had increased to over $10,000, a sum now more than the vacant land was worth. Further, three attempts to sell the property at sheriff's sale had resulted in no bid, no sale.
 {¶ 29} Appellants have also maintained Jarvis failed to cooperate to prevent or minimize waste or diminution in value of the property. Appellants recognize and concede there were no funds available to the estate to pay for repairs or maintenance. Jarvis had no duty to expend her own personal funds to preserve the asset. Given the insolvency of the estate, we find no error in the trial court's decision Ms. Jarvis did not breach her fiduciary duties.
 {¶ 30} For these reasons, appellants' first, second, third, and fourth assignments of error are overruled.
 {¶ 31} The June 4, 2002 Judgment Entry of the Stark County Court of Common Pleas, Probate Division, is affirmed.
By: Hoffman, P.J., Wise, J. and Edwards, J. concur.
topic: no breach of fiduciary duties